UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

DAVID ST. PIERRE                               :
                                               :
          v.                                   :          C.A. No. 06-95A
                                               :
MICHAEL J. ASTRUE,[1]                          :
Commissioner of the Social Security            :
Administration                                 :

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act ("Act"), 42 U.S.C. § 405(g).  Plaintiff filed his Complaint on March 2, 2006 seeking to reverse the decision of the Commissioner or, in the alternative, to remand for further proceedings.  On January 30, 2007, Plaintiff filed a Motion for Summary Judgment.  (Document No. 7).  On March 1, 2007, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner.  (Document No. 8).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  Based upon my review of the record and the legal memoranda filed by the parties, I find that there is not substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I order that the Commissioner's

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted, therefore, for Commissioner Jo Anne B. Barnhart as the Defendant in this suit.

Motion for an Order Affirming the Decision of the Commissioner (Document No. 8) be DENIED and that Plaintiff's Motion for Summary Judgment (Document No. 7) be GRANTED.

## I.      PROCEDURAL HISTORY

Plaintiff filed applications for SSI and DIB on April 28, 2003, alleging disability beginning March 26, 2003.[2]  (Tr. 113-115, 516-520).  The applications were denied initially (Tr. 87-90) and on reconsideration.  (Tr. 92-94).  On January 25, 2005, a hearing was held before Administrative Law Judge Barbara Gibbs (the "ALJ"), at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified.  (Tr. 33-84).  On April 8, 2005, the ALJ issued a decision finding that Plaintiff was not disabled.  (Tr. 13-31).  Plaintiff appealed to the Appeals Council by filing a request for review and appeal letter.  (Tr. 11-12).  The Appeals Council denied Plaintiff's request for review on January 13, 2006.  (Tr. 5-8).  A timely appeal was then filed with this Court.

## II.      THE PARTIES' POSITIONS

Plaintiff argues that the ALJ's physical and mental RFC findings are not supported by substantial evidence.  Plaintiff further argues that the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain and other non-exertional impairments.

The Commissioner disputes Plaintiff's claims and argues that there is substantial evidence in the record that supports the ALJ's conclusions.

## III.      THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more

---

[2]  Plaintiff originally alleged an onset date of November 20, 2001 in his applications.  However, at the administrative hearing, Plaintiff amended that onset date to March 26, 2003 – the date he suffered a heart attack.  (Tr. 37).

than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the

law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district

court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four

remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart,

274 F.3d 606, 609-10 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the

case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726,

729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals

Council).  After a sentence four remand, the court enters a final and appealable judgment

immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken
> before the Commissioner of Social Security, but only upon a showing
> that there is new evidence which is material and that there is good
> cause for the failure to incorporate such evidence into the record in
> a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is

new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there

is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086,

1090-92 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the

Commissioner, if new, material evidence becomes available to the claimant.  Jackson, 99 F.3d at

1095.  With a sentence six remand, the parties must return to the court after remand to file modified

findings of fact. <u>Id.</u> The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. <u>Id.</u>

## IV.   DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.   Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. <u>See</u> <u>Rohrberg v. Apfel</u>, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. <u>See</u> <u>Keating v. Sec'y of Health and Human Servs.</u>, 848 F.2d 271, 275-76 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. <u>See</u> <u>Wheeler v. Heckler</u>, 784 F.2d 1073, 1075 (11th Cir. 1986). When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.   20 C.F.R §. 404.1527(d).   However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.   See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.   However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.   20 C.F.R. § 404.1527(e).   The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.   20 C.F.R. § 404.1527(e).   See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.       Developing the Record

The ALJ has a duty to fully and fairly develop the record.    Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).   The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.   See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).   The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.    The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth,

if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant.  <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  <u>Seavey</u>, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  <u>Id.</u>; <u>see also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  <u>Nguyen</u>, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  <u>Heggarty</u>, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  <u>See</u> <u>Ferguson v. Schweiker</u>, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

## 1.   Pain

"Pain can constitute a significant non-exertional impairment."  <u>Nguyen</u>, 172 F.3d at 36.  Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42

U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.      APPLICATION AND ANALYSIS

Plaintiff was forty-seven years old at the time of the ALJ hearing.  (Tr. 113).  Plaintiff completed his G.E.D. after serving in the military and completed two years of college.  (Tr. 128, 136).  He has past work experience as a carpenter, warehouse worker and welder.  (Tr. 148).  Plaintiff alleges disability due to arthritis, heart defects, lyme disease, depression, anxiety, knee surgery, shoulder pain and post-traumatic stress disorder.  (Tr. 122, 156.)  Plaintiff last worked on November 20, 2001 and stopped due to "arthritis of my major joints, hands, knees."  (Tr. 122).  Plaintiff suffered a heart attack on March 26, 2003 and underwent a "stat" angioplasty with stenting. (Tr. 292).  Plaintiff's family has a history of heart disease.  He lost both of his parents to heart disease during his childhood (father at age fifty-two and mother at age forty-seven).  (Tr. 473). Plaintiff also lost a sister in 2002 (at age fifty-seven) due to a blocked artery.  Id.

On March 3, 2003, Plaintiff presented to the Emergency Room at the VA Medical Center with complaints of chest pain.  (Tr. 273).  Plaintiff was diagnosed with musculoskeletal pain and was discharged in stable condition.  (Tr. 275-276).  On March 26, 2003, Plaintiff went to the Emergency

Room at the VA Medical Center again, due to chest pain. Plaintiff was diagnosed with an acute anterolateral myocardial infarction. (Tr. 277-921). He underwent angioplasty with stent placement. (Tr. 187-188, 220-261, 292-341). On March 31, 2003, Plaintiff was discharged from the Hospital. (Tr. 188).

On April 17, 2003, Plaintiff was examined by Dr. George Aziz, complaining of shortness of breath with exertion, right groin soreness and mild chest discomfort during times of relaxation. (Tr. 216). Dr. Aziz scheduled a stress test and enrolled Plaintiff in cardiac rehabilitation. (Tr. 218).

In May 2003, Plaintiff was examined by Dr. Brenda Burke, a rheumatology physician, with complaints of feeling tired and achey, however, he denied shortness of breath and chest pain. (Tr. 214). Upon examination, Dr. Burke found that Plaintiff had no edema and full range of motion in all joints except the right shoulder, as well as 5/5 grip strength in his hands. Id. She opined that Plaintiff had "gouty arthritis," osteoarthritis in his hands and previous right knee and right shoulder injuries. (Tr. 214-215).

On June 19, 2003, Plaintiff was examined by Dr. Aziz and reported some improvement in his physical ability, but he was still limited and had not started cardiac rehabilitation. (Tr. 209-210). Dr. Aziz noted that Plaintiff had no chest pain during a recent stress chest, but had to stop due to shortness of breath. (Tr. 209).

On July 18, 2003, Dr. Amir Missaghian, a state agency physician, reviewed the evidence and completed a physical residual functional capacity ("RFC") assessment. (Tr. 166-173). He opined that Plaintiff could perform the exertional requirements of light work, but would have some limitations in his ability to push/pull with his upper and lower extremities and could only occasionally climb, balance, stoop, kneel crouch and crawl. (Tr. 167-168). Additionally, he

concluded that Plaintiff should limit his reaching and handling, and should avoid exposure to extreme cold, heat, wetness and humidity.  (Tr. 169-170).

Plaintiff sought mental health services through the VA Medical Center in April 2003 and reported feeling post-traumatic stress symptoms.  (Tr. 461, 469-476).  On July 17, 2003, Dr. Iourii Mazour, performed a mental status examination on Plaintiff and found that he was cooperative, engaged in the interview, and had goal-directed thoughts with good insight.  (Tr. 206-207).  He further found that Plaintiff had no deficits in attention, concentration or his ability to understand. Id.  Dr. Mazour diagnosed Plaintiff with adjustment disorder with anxiety and depression, and dyssomnia.  (Tr. 207-208).  He assigned a Global Assessment of Functioning "GAF"[3] score of forty[4].  (Tr. 207).  Plaintiff attended a few individual counseling sessions, but was eventually discharged from mental health services because he often did not attend sessions and failed to respond to contact. (Tr. 466-468).

Beginning in July 2003, Plaintiff attended several physical therapy sessions and was able to exercise for up to seventy-four minutes using the bicycle, treadmill and weights. (Tr. 189-191, 199-204). In September 2003, Plaintiff had to stop physical therapy due to groin pain and was told to return after he visited his primary doctor. (Tr. 189).  Plaintiff then underwent an ultrasound exam of his groin which showed no evidence of an aneurysm. (Tr. 397).  On September 22, 2003, Plaintiff

---

[3]  The GAF scale is used for reporting the clinician's judgment of the individual's overall level of functioning and concerns psychological, social and occupational functioning and, unless otherwise noted, refers to the level of functioning at the time of the evaluation. See American Psychiatric Ass'n., Diagnostic & Statistical Manual of Mental Disorders 30 (4th ed. 1994) (hereinafter, "DSM-IV").

[4]  A GAF of thirty-one to forty indicates "some impairment in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas such as work or school, family relations, judgment, thinking, or mood (e.g. depressed man avoids friends, neglects family, and is unable to work... )" DSM-IV. at 32.

underwent a spinal x-ray which showed the disc spaces were well maintained, except some narrowing at L5-Sl. (Tr. 396).

On September 29, 2003, Dr. Youssef Georgy, a state agency physician, reviewed the evidence and completed a physical RFC assessment.  (Tr. 400-407).  Dr. Georgy opined that Plaintiff could perform the exertional requirements of light work, but would have some limitations in his ability to push/pull with his upper and lower extremities.  (Tr. 401).  He found that Plaintiff should avoid frequent overhead reaching with his right arm, but would have no other limitations. (Tr. 403-407).

On October 28, 2003, Dr. Timothy Rivinus, a state agency physician, reviewed the evidence and completed a psychiatric review technique form.  (Tr. 410-428).  He opined that Plaintiff would have moderate limitations in activities of daily living, no limitations in social functioning and moderate limitations in concentration, persistence, and pace, with no episodes of decompensation. (Tr. 420).  Dr. Rivinus also opined that Plaintiff could perform simple work requirements with scheduled breaks.  (Tr. 426).

On October 30, 2003, Dr. James Sullivan evaluated Plaintiff at the request of Plaintiff's attorney.  (Tr. 429-435).   Dr. Sullivan noted that Plaintiff endorsed symptoms of depression, anxiety, restlessness, fatigue and muscle tension.  (Tr. 432-433).  He assigned a GAF score of forty-seven[5], diagnosed Plaintiff with major depressive disorder and generalized anxiety disorder and opined that Plaintiff had limited ability to perform full-time work.  (Tr. 433).  Dr. Sullivan also

---

[5] A GAF of forty-one to fifty indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 32.

completed a mental functional capacity questionnaire and opined that Plaintiff had mild to moderately-severe limitations in various areas of functioning. (Tr. 434-435).

On November 5, 2003, Plaintiff complained of groin pain and was examined by Dr. Daniel Kaplon who found no evidence of a hernia or pseudo aneurism and determined that Plaintiff only had musculoskeletal pain. (Tr. 452). Dr. Kaplon instructed Plaintiff to continue with pain medication. Id.

On January 17, 2004, Plaintiff was struck by a vehicle while he was walking. (Tr. 495, 500). On January 21, 2004, Plaintiff saw Dr. Todd Sefla, a chiropractor, and reported that he experienced pain in his lumbar spine, left knee, and right shoulder, and he also complained that he had headaches and vision problems. (Tr. 500-503). Dr. Sefla's treatment included manipulation, ultrasound and exercises. (Tr. 502). Plaintiff regularly visited Dr. Sefla through June 2004, at which time Dr. Sefla discharged Plaintiff. (Tr. 504-514). Upon discharge, Dr. Sefla reported that Plaintiff's lower back pain was minimal and Plaintiff experienced relief from pain with heat and stretching. (Tr. 514). Dr. Sefla opined that, for the most part, Plaintiff was able to increase his activity with diminished pain. Id.

After his accident in January, Plaintiff began to see Dr. Albert Marano, a neurologist. (Tr. 495). Dr. Marano first examined Plaintiff on February 2, 2004, and found that he was alert and oriented, had vertical diplopia, increased pain with forward flexion, but had strong and equal hand grasps and no difficulty with walking. (Tr. 496). Dr. Marano diagnosed a concussion and a left knee and ankle injury, however, Plaintiff did not want pain medication at that time. Id. Dr. Marano also referred Plaintiff to Dr. Izzi, who had treated him orthopedically in the past. Id.

-15-

On February 19, 2004, Plaintiff had a follow-up appointment with his cardiologist, Dr. Aziz, and reported that he had experienced one episode of chest pain after his accident.  (Tr. 441-442). Dr. Aziz instructed Plaintiff to use nitroglycerin medication as needed for pain, but to return to the hospital for any extended episodes of pain.  Id.

On April 1, 2004, Dr. Joseph Izzi, an orthopedic surgeon, explained that Plaintiff had joint pain and swelling of his right shoulder, and pain with all motions of the right shoulder.  (Tr. 485). Dr. Izzi found no neurological or vascular deficits in Plaintiff's upper extremities, but noted Plaintiff's complaints of cervical and lumbar spine pain with flexion.  Id.  He advised Plaintiff to continue heat, exercises, and physical therapy, and he discharged Plaintiff from further services.  Id.

On June 10, 2004, Plaintiff went to the VA Medical Center, and Dr. Anil Nagha performed a general assessment.  Dr. Nagha opined that Plaintiff had chronic osteoarthritis and gout which were controlled with medication.  (Tr. 446).  Dr. Nagha reported that Plaintiff had been struck by a car while he was walking, but did not have any significant traumatic injury.  Id.  He opined that Plaintiff was at "baseline" and stable with respect to his hand, spine and shoulder arthritis.  Id.

On April 29, 2004, Plaintiff returned to Dr. Marano with complaints of anxiousness and depression.  (Tr. 497).  Dr. Marano prescribed medication and documented that Plaintiff had a concussion, a right shoulder injury and a knee injury as a result of the January 2004 car accident. Id.  Dr. Marano examined Plaintiff again on June 8, 2004 and opined that his concentration had improved and his anxiety regarding the accident had improved.  (Tr. 498).  He noted that Plaintiff still experienced pain in his right shoulder and knee which Dr. Marano referred to Dr. Izzi.  Id.  Dr. Marano then discharged Plaintiff from his care.  Id.

On August 17, 2004, Plaintiff was evaluated by Dr. Pamela Gunn at the VA Medical Center at which time Plaintiff complained of some right groin pain and right hip pain. (Tr. 443). On August 30, 2004, Plaintiff had a computed tomography ("CT") scan of his spine which revealed degenerative changes with mild disc bulging and disc space narrowing, but no evidence of significant extra dural defect or spinal stenosis. (Tr. 436).

On November 18, 2004, Dr. Izzi examined Plaintiff and opined that he had a dislocation of his right acromioclavicular joint with no neurovascular deficits in the upper extremities. (Tr. 487). He advised Plaintiff to continue with exercise and heat and to visit the pain center and a neurosurgeon. (Tr. 487-488).

On December 10, 2004, Plaintiff returned to Dr. Marano and reported that he had hip pain, limited range of motion of his right shoulder and weakness in his right leg. (Tr. 477). Dr. Marano opined that Plaintiff was disabled from "usual and customary duties" since January 2004. Id. Dr. Marano also completed a physical capacity evaluation at that time and opined that Plaintiff could lift and carry up to twenty pounds occasionally, but could not reach, push, pull or perform fine manipulation. (Tr. 480). He also opined that Plaintiff could only sit for two hours, stand for one hour and walk for one hour at a time. Id.

On December 30, 2004, Dr. Marano also completed several emotional impairment questionnaires. (Tr. 478-479, 481-484). Dr. Marano opined that Plaintiff could not work on a full-time basis. (Tr. 478-479). Dr. Marano also found that Plaintiff had moderately-severe limitations in many categories of functioning (Tr. 483), and he opined that Plaintiff had substantial limitations which began in March 2003 after his cardiac heart failure. (Tr. 482).

In January 2005, Dr. Izzi completed a pain questionnaire and opined that Plaintiff had severe pain from a concussion, cervical and lumbar spine strains and right extremity injury. (Tr. 489). Dr. Izzi also completed a physical capacity evaluation form and opined that Plaintiff could not lift more than ten pounds occasionally, could not use his right arm for reaching, pushing and pulling, and could only sit for two hours at a time, stand for two hours at a time, walk for three hours at a time and could not work on a full-time basis. (Tr. 490-492).

A.     **The ALJ Improperly Made Independent, Lay Determinations as to Plaintiff's Physical and Mental RFC.**

Plaintiff first argues that the ALJ erred in her interpretations of the opinions of the state agency physicians. It is apparent from the ALJ's decision that she gave substantial weight to the opinions of three non-examining state agency physicians in making her RFC assessment. She concluded that these opinions indicate that Plaintiff can "perform light work with some non-exertional limitations" (Tr. 24) and "simple, well-articulated work requirements." (Tr. 25).

As to the physical RFC element, the ALJ relied upon non-examining opinions rendered by Dr. Missaghian on July 18, 2003 (Ex. 1F) and by Dr. Georgy on September 29, 2003 (Ex. 4F) based on their review of the medical records. However, a significant portion of the medical evidence in this case post-dates these opinions and includes treatment for injuries suffered by Plaintiff after being struck by a car while walking on January 17, 2004. (Tr. 500). Thus, the state agency physicians never had the benefit of these later medical records in rendering their opinions. In addition, the ALJ did not utilize the services of a medical expert at the hearing in reviewing the totality of the record.

-18-

The ALJ acknowledged this deficiency in her decision and stated that, "[a]lthough [Drs. Missaghian and Georgy] had the benefit of only a portion of the records now in evidence, their opinions remained largely consistent with records submitted later, and they are given appropriate weight." (Tr. 24).  The ALJ offered no further explanation and did not particularly identify the later submitted records she relied upon.  Id.  In other words, it appears that the ALJ independently reviewed the later medical evidence and concluded that it would not have changed the opinions rendered by Drs. Missaghian and Georgy.  Plaintiff argues that, as a lay person, the ALJ was "not qualified to determine whether their opinions would or would not have changed had those doctors seen the later evidence."   Document No. 7 at p. 12.   This Court agrees, given the unique circumstances of this case.  See Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person...the ALJ was simply not qualified to interpret new medical data in functional terms and no medical opinion supported the determination.").

Although the Commissioner generally advocates that the ALJ's RFC assessment is supported by substantial evidence, his brief fails to directly address the argument of Plaintiff discussed above.  Further, the ALJ's reliance on the mental RFC assessment made by Dr. Rivinus, a non-examining State agency physician, is also subject to the same deficiency.  See Ex. 5F.  It was completed by Dr. Rivinus on October 28, 2003 and, as candidly noted by the ALJ, "[a]gain, this expert did not have the benefit of the bulk of the exhibit [sic] in evidence in this matter."  (Tr. 25).  However, the ALJ concluded that Dr. Rivinus' opinion "remained consistent with the later-received records."  Id.  In other words, the ALJ impermissibly rendered her lay opinion that the "bulk" of the medical evidence developed after Dr. Rivinus rendered his opinion would not have changed his opinion.  However,

as noted above, Plaintiff was hit by a car after these non-examining opinions were rendered, and there is evidence that these later medical problems may have impacted Plaintiff's mental health. For instance, on April 29, 2004, Dr. Marano noted that Plaintiff reported "some increased anxiety and depression issues since the accident." (Tr. 497). Further, on December 30, 2004, Dr. Marano completed an emotional impairment questionnaire which opined that Plaintiff had "depression, anxious about walking in parking lots, etc.," "post-concussion syndrome," and "post-traumatic stress reaction." (Tr. 478).

This Court is mindful of the difficult demands placed on ALJs and does not lightly decide to grant a remand. In this case, the ALJ issued a lengthy decision and thoroughly explained her evaluation of Plaintiff's treating and consultative physicians. However, the ALJ failed to account for the unusual circumstances in this case when she summarily adopted the opinions of the non-examining state agency physicians. As noted above, well over one year passed between those opinions and the ALJ's decision, and Plaintiff's medical condition did not remain static over that period. Because of these factors, a more prudent approach would have been for the ALJ to utilize a medical expert at the hearing to opine on the totality of the medical evidence or to obtain an up-to-date consultative records review or examination report. Although the decision to obtain such evidence is best left to the discretion of the ALJ, a remand is warranted due to the unique posture of this case including the heavy weight accorded to the non-examining opinions by the ALJ and the relative staleness of those opinions.

### B.     Plaintiff's Other Claimed Errors

Since this Court has ordered a remand for additional administrative proceedings as noted above, a consideration of Plaintiff's other claimed errors is unnecessary at this point.

## VI.    CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 8) be DENIED and that Plaintiff's Motion for Summary Judgment (Document No. 7) be GRANTED.   Final judgment shall enter in favor of Plaintiff reversing the Decision of the Commissioner and remanding the case for further administrative proceedings as described herein.


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
March 14, 2007